1

2

3

4

5

6

7

8                    **UNITED STATES DISTRICT COURT**

9                       EASTERN DISTRICT OF CALIFORNIA

10  BRUCE MADDON,                    )    1:08-cv-82 GSA
                                     )
11              Plaintiff,           )    ORDER REGARDING PLAINTIFF'S SOCIAL
                                     )    SECURITY COMPLAINT
12      v.                           )
                                     )
13  COMMISSIONER OF SOCIAL           )
    SECURITY,                        )
14                                   )
                                     )
15              Defendant.           )
    _____)

16

17                            **BACKGROUND**

18         Plaintiff, Bruce Maddon ("Plaintiff") seeks judicial review of a final decision of the

19  Commissioner of Social Security ("Commissioner") denying his application for disability

20  insurance benefits and supplemental security income pursuant to Titles II and XVI of the Social

21  Security Act.  The matter is currently before the Court on the parties' briefs, which were

22  submitted, without oral argument, to the Honorable Gary S. Austin, United States Magistrate

23  Judge.[1]

24  //

25  //

26  //

27  _____

28         [1] The parties consented to the jurisdiction of the United States Magistrate Judge.  On October 30, 2008, the
    action was reassigned to the Honorable Gary S. Austin for all purposes.

                                        1

# FACTS AND PRIOR PROCEEDINGS[2]

In December 22, 2003, Plaintiff filed an application alleging disability since June 17, 2003. AR 114. His applications were denied initially and on reconsideration. AR 47, 54. Subsequently, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). AR 47, 54, 82. ALJ Sean Teehan held a hearing on October 18, 2005, and issued an order denying benefits on January 13, 2006. AR 61-65. Upon Plaintiff's request for review, on August 19, 2006, the Appeals Council vacated the decision and remanded the case for further proceedings. AR 66-67.

Pursuant to the remand, ALJ Bert Hoffman conducted a second administrative hearing on April 3, 2007. AR 420-465. On May 22, 2007, ALJ Hoffman issued an order denying benefits. AR 21-30. On June 8, 2007, Plaintiff requested a review of the hearing. AR 16-17. On November 13, 2007, the Appeals Council denied review. AR 7-9.

Hearing Testimony

The October 25, 2005 Hearing

ALJ Sean Teehan held a hearing on October 28, 2005, in Fresno California. Plaintiff appeared and testified. He was represented by Gina Fazia. Vocational Expert ("VE") Thomas Dachelet also testified. AR 347-419.

At the time of this hearing, Plaintiff was fifty-two years old. AR 351. He was living with a friend in a mobile home in Kerman California. AR 251. Prior to that time, he had been living with a friend in Castro Valley, California. AR 352. Plaintiff also sometimes stays with his ex-wife who lived in Freemont, California. AR 379; 384. Plaintiff testified that he received money from his mother and "Junior" for food. AR 378

Plaintiff did not graduate from high school but obtained a GED while he was incarcerated for driving under the influence of alcohol ("DUI"). AR 356. Plaintiff last worked in June or July 2002 driving heavy equipment at Hoff Brothers. AR 357. He performed this work for approximately six years. AR 358. Plaintiff stopped working there because he was diagnosed

---

[2]References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

with chronic pancreatitis and he was experiencing pain in his lower stomach.  AR 359.

At the time of the hearing, Plaintiff indicated he was unable to work because he was in too much pain due to his pancreatitis, fibromyalgia, gastritis, and rheumatoid arthritis.  AR 361; 369.  Plaintiff was taking Tramadol for pain, Pepcid for his acid reflux, Dicyclomine for gastritis, and Elavil for depression.  AR 362.  Plaintiff experienced dizziness and light-headedness when taking the Tramadol which he was taking three times a day.  AR 363.  Plaintiff also experienced blurred vision, dizziness, and sleepiness when taking the Dicyclomine.  AR 366.  Plaintiff testified that his rheumatoid arthritis causes him constant pain in both of his shoulders, and his left hip.  AR 370.  Plaintiff also experiences constant pain in his joints, legs, feet, toes, and neck due to fibromyalgia.  370-373.  He also has numbness in both of his hands which prevents him from holding things, from writing, and from reaching forward with both arms.  AR 398.

Prior to working as a driver of heavy equipment, Plaintiff worked as a bartender for approximately nine months.  His duties included making drinks, cleaning up, and stocking the bar.  AR 374-375.  Plaintiff had also worked as a maintenance person at a Target store, as the head of a receiving department at Nicholas Stone Software, stocking shelves at Toys-R-Us, loading trucks for Zacky Farms, and as a janitor at Reno's Bar.  AR 376, 392-396.

Since approximately 2003, Plaintiff relied on his mother and his friend "Junior" for food.  AR 377.  In the past, Plaintiff has lived with his ex-wife, "Junior" and his mother.  Plaintiff is only allowed to stay at his mother's house for two weeks out of the year.  AR 378.  Plaintiff testified that when staying with his ex-wife and Junior, he cooks meals and cleans.  AR 378-380.  While staying with his ex-wife he would also help with groceries including carrying groceries into the house.  AR 380-382.  Plaintiff's mother has heart conditions so he takes her to appointments, vacuums, and helps her with grocery shopping.  AR 382, 389.  Plaintiff is able to do his own laundry.  AR 382.

Plaintiff drives a car, although his license was revoked for a conviction for driving under the influence of alcohol ("DUI").  AR 378.  Plaintiff occasionally drives from Fresno to Fremont, and drove to the Bay Area about a week before the hearing in order to retrieve some medical records.  AR 385, 400.  He also sometimes takes the train to visit family.  AR 384.

Plaintiff has made the drive from Fresno to Freemont since becoming sick. AR 385. He can make the drive in five hours. AR 385. He used to be able to make the drive in three hours, but he had to stop too many times. AR 385. If he takes the train he can get up and walk around. AR 385.

On a typical day, Plaintiff gets up at 7:00 am, makes coffee, and smokes a cigarette. AR 385. Plaintiff smokes one pack of cigarettes a day and drinks between two and three twelve packs of beer a day. AR 386. Plaintiff has not obtained any treatment for his alcohol use since his incarceration. AR 387. He does not take any other street drugs. AR 387.

Plaintiff can walk about fifteen to twenty yards before slowing down and could walk a mile "if his life depended on it." AR 389-390. Plaintiff stated that he could lift a case of beer. AR 375, 391, 408. Plaintiff is able to sit for one hour but then needs to get up. AR 391. Plaintiff is able to stand for thirty minutes, and can stand all day, as long as he is given time to sit down. AR 391-392.

VE Thomas Dachelet testified that based on Plaintiff's testimony and hypothetical posed by the ALJ, he would not be able to perform his past work. AR 406. However, Plaintiff could perform work as a bagger, parking lot attendant, garment sorter, and a general office clerk. AR 408, 409, 413, 417.

The April 3, 2007 Hearing

ALJ Hoffman held a hearing on April 3, 2007, in Fresno, California. Plaintiff appeared and testified. He was represented by Charles Oren. Vocational Expert ("VE") Cheryl Chandler also testified. AR 420-465.

Plaintiff testified that he has been living at his mother's house in Kerman. AR 424. Plaintiff is only allowed to stay at his mother's house for two weeks at a time because his mother lives in a senior citizen community. AR 424-426. He usually lives with his ex-wife in Freemont. AR 424-426. He travels back and forth between the residences by train. AR 426. He occasionally stays with his drinking buddy and partner Junior Cudo in Kerman. AR 435.

Plaintiff testified that a rheumatologist at UMC diagnosed him with fibromyalgia in 2004. AR 427. At that time, he was treated with shots, was told there was nothing that could be done

4

for his condition, and was referred to his primary care physician.  AR 428.  Thereafter, Plaintiff began seeing Dr. Dickey for fibromyalgia, however, Plaintiff acknowledged that Dr. Dickey had never treated anyone for fibromyalgia and "didn't know too much about it."  AR 429.  Plaintiff reported that his appointments with Dr. Dickey last about ten to fifteen minutes during which Dr. Dickey asks Plaintiff a few questions and fills his prescriptions.  AR 453-454.

Plaintiff testified that his symptoms have become worse since the last hearing.  AR 429. He was still taking Tramadol three to four times a day.  AR 429.  The medication makes him dizzy and sleepy.  AR 430, 451.  He has been taking the medication since 2004.  AR 452. Plaintiff was advised not to drink alcohol while taking the medication, but he continues to drink a couple of beers a day.  AR 430.  He also "ties one on" approximately once a week.  AR 430.  He does not take the medication during those periods because it makes him get drunk too quickly. AR 430-431.

Plaintiff stated that his ex-wife and his mother are supporting him. AR 433.  He spends most of his time at his ex-wife's house with his fifteen year old grandson.  AR 432. Both his ex-wife and grandson are out of the house by 7:30 am.  AR 432.  Plaintiff previously took his grandson camping and fishing, but no longer does so.  AR 433.

Plaintiff testified he takes Viagara when he goes to see his friend "Monica" in Castro Valley which occurs twice a month.  AR 434.  He travels by BART to see her.  AR 434.  He sometimes stays with Monica for a month at a time, and they go out to bars together.  AR 442. He also indicated that although he sometimes cooks for her, she was more of a "take out person" and would bring food home.  AR 442.  When staying with Monica, Plaintiff  sometimes walks to the store.  AR 442-443.

Plaintiff stated that he hit his head in the summer of 2006 when he drank too much wine at a party and fell while dancing.  AR 434-435.  Plaintiff indicated that he cannot dance well with his fibromyalgia, but acknowledged he was drunk at the time he fell. AR 436.  Plaintiff suffered a felony conviction for driving under the influence of alcohol and has three or four prior DUI convictions.  AR 444.

Plaintiff testified he has pain all over his body including his shoulders, neck, knees, hips,

feet and arms.  AR 427.  Specifically, he has burning in his left shoulder and both shoulders go numb if he tries to lift either arm.  AR 436-437.  He also suffers from neck and lower back pain and constantly feels like he is being stabbed in his back.  AR 437-438.  He also experiences numbness in his hands, neck and both of his feet.  AR 437, 450.  Plaintiff has difficulty sleeping which includes having trouble going to sleep and waking up during the night because his knees and feet go numb.  AR 449-450.  The numbness travels done his spine and circles around to his bellybutton.  AR 450.

Plaintiff estimated that he is able to walk for five minutes and can sit for ten to twenty minutes, but he needs to stand up and stretch.  AR 439.  However, he is able to sit for approximately seven hours in an eight hour day.  AR 438-439.  He is also able to lift a gallon of milk.  AR 440.

Plaintiff testified that his pancreatitis flares up when he drinks alcohol.  AR 445.  When this occurs, the pain is worse than the pain he experiences from fibromyalgia.  AR 445.  Plaintiff reported that his most recent bout of pancreatitis occurred three weeks ago and followed a three-day drinking spree.  AR 445-446.

Plaintiff testified that in the past he worked as a leveler which entailed driving a tractor and paddle scrapper.  AR 455.  He would have to climb up two steps to get on the paddle scrapper.  AR 455.  Plaintiff also testified he was head of receiving at a computer software company in Freemont.  AR 458.   Plaintiff also worked as a roofer and a painter.  AR 461.

VE Chandler testified that Plaintiff's past work as a tractor driver is light, semi-skilled work, and that his work as a roofer is medium to heavy unskilled.  AR 461.  The VE was asked to assume a hypothetical of a worker of Plaintiff's age and educational background who could lift and carry less than ten pounds in an eight hour day, could only sit for fifteen to twenty minutes and who could stand and walk for only fifteen to twenty minutes at a time. AR 462.  VE Chandler indicated that there no jobs were available.  AR 462.

In a second hypothetical, VE Chandler was asked to assume that the person had the residual functional capacity to do light work but the person could not do any lifting above the shoulder.  AR 462.  However, the worker was capable of pushing and pulling within the weight

limits for fifty percent of an eight hour day.  AR 462.  The VE indicated this hypothetical worker could not perform plaintiff's past work as a tractor driver.  However, this worker could perform work as a hand packager, unskilled light jobs in retail sales, and as an usher and that there are 41,000, 20,000 and 10,500 jobs available in those respective fields in the California.  AR 463.

Medical Record

From September 2002 through February 2003, Plaintiff was treated by Dr. Juan Alas-Pocasangre, M.D., at the San Joaquin Health Center with complaints of heartburn, abdominal pain, and stomach pain.  AR 266-276.   Plaintiff was also treated at Tri-City Health since 2003 for a combination of GI problems such as pancreatitis and GERD, as well as for shoulder pain. AR 153-155.  Subsequent medical records confirm ongoing GI problems including GERD (AR 160, 258, 264), irritable bowel syndrome (AR 252, 288, 294, 311), and pancreatitis.  AR 153, 159, 165, 191.  Later testing including abdominal CT scans, upper GI series, and pelvic CT scanning resulted in positive diagnosis for these conditions.  AR 167, 175, 193, 195, 202, 214. Plaintiff was diagnosed with frozen shoulder on October 31, 2003.  AR 169.  Plaintiff also has a history of wrist surgery.  AR 209, 230.

On April 2, 2003, Plaintiff visited the emergency room at University medical Center ("UMC") with complaints of abdominal pain. AR 209.  Plaintiff reported that he had drunk twelve to fourteen beers per day for the previous sixteen years, that he was a smoker, and that he smoked "pot." AR 209.  At a follow-up appointment, Plaintiff indicated that he had a history of drug use including snorting cocaine.  AR 205.  The ER physician diagnosed Plaintiff with acute pancreatitis and acute alcohol abuse.  AR 210.

At an appointment with Dr. Alas on April 15, 2003, Plaintiff reported that physicians at UMC told him that he had chronic pancreatitis.  AR 263.  During the visit, Plaintiff had requested pain medication and "disability." AR 263.  Tests performed in August 2003 resulted in Plaintiff having three polyps removed, and one tumor biopsied. AR 201-204.  All polyps were benign.  AR 201-204.

On July 21, 2003, tests performed at Miller Radiology indicated degenerative changes in the thoracic spine with no evidence of cardiopulmonary disease.  AR 261.

On September 19, 2003, Plaintiff was hospitalized for four days for abdominal pain. AR 183-185. Plaintiff admitted to drinking fourteen cans of beer immediately prior to the hospitalization, but that he usually drinks six to ten cans of beer a day. AR 183. On discharge, he was diagnosed with acute pancreatitis, hypertension, and alcohol abuse. AR 183. Plaintiff was discharged with no pain. AR 184. At a follow-up appointment on October 7, 2003, Plaintiff told UCM staff that he wanted disability, but he was referred to his primary physician. AR 171.

On November 3, 2003, Plaintiff sought treatment from Dr. Jan V. Dickey, M.D., at the Tri-City Health Center in Freemont, California. AR 159. Plaintiff told Dr. Dickey that he had a history of pancreatitis and GERD which caused him pain for which he took Vicodin. AR 159. Dr. Dickey prescribed Protonix. AR 159-160. At a follow-up visit on November 15, 2003, Plaintiff was prescribed Vicodin. AR 157. Treatment notes indicate that Plaintiff stated that he wanted disability because he was unable to work. AR 157. Dr. Dickey treated Plaintiff for symptoms related to insomnia, pain in his back, hand, and heels, as well as for fibromyalgia until at least March 2007. AR 279 -290; 294-315; 319-320; 341.

On December 2, 2003, Plaintiff returned to Tri-City Health Center with complaints of pain in his left shoulder and requested more Vicodin. AR 155-156. June L. Glenn-Larson M.D., prescribed fifteen pills of Vicodin and ordered a shoulder x-ray, as well as lab work to rule out rheumatoid arthritis. AR 156. The x-ray of Plaintiff's left shoulder was normal. AR 255. Lab work showed that Plaintiff's "rheumatoid arthritis" was within normal range. AR 161. On December 9, 2003, Dr. Dickey diagnosed Plaintiff with shoulder strain, alcoholism, and GERD. AR 154. At that time, Dr. Dickey discontinued the Vicodin and began prescribing Tramadol. AR 154.

On March 13, 2004, Plaintiff was examined by Steven Stoltz, M.D., an internal medicine consultative examiner who diagnosed Plaintiff with pancreatitis, bilateral shoulder pain, left hand pain, and left leg pain. AR 229 -234. Dr. Stoltz found Plaintiff had normal range of motion in his neck, back, elbows, wrists, hips, knees, and ankles, however, a decrease in the range of motion in both of Plaintiff's shoulders were noted AR 231-232. Based on this limitation, Dr. Stoltz found that Plaintiff would be restricted from doing any activities that involved reaching above his

shoulder, that he could lift and carry twenty pounds occasionally and ten pounds frequently, and that he had no restrictions on sitting, standing, or walking.  AR 234.

On April 6, 2004, Dr. Lopez, M.D., a nonexamining state agency doctor preformed a Functional Capacity Report ("FCR") and found that Plaintiff could occasionally lift twenty pounds and ten pounds frequently, could stand, walk, and sit about six hours in an eight hour day, and was limited in his upper extremities. AR 235-242. Specifically, Dr. Lopez found that Plaintiff should not reach frequently above his shoulder.  AR 233. These findings were reviewed and affirmed by Dr. Anne Khong, M.D. on August 4, 2004.  AR 242.

In June 2004, Plaintiff was seen by a rheumatologist at UMC for an arthritis evaluation due to the presence of "low-level ANA" found in his blood.  AR 323.  Physician Assistant Crockett found Plaintiff had frozen shoulders, and that there was tenderness at his left trochanter but that the rest of the muscoskelatal exam was within normal limits.  AR 323.  Ms. Crokett made a negative diagnosis and emphasized that the "ANA was irrelevant."  AR 323.

At follow-up appointment made in August 2004, Plaintiff indicated that neither the six-week course of prednisone nor cortisone shots were helping.  AR 322.  Plaintiff reported pain in his joints, shoulders, wrist and numbness in his index finger.  AR 322-323.  Medical Assistant G. Lopez noted that fibromyalgia was the most likely diagnosis since Plaintiff had not responded to the steroid treatments. AR 322.  On October 22, 2004, Plaintiff tested positive on a tender points evaluation for fibromyalgia.  AR 321.

On February 10, 2006, back x-rays noted spurring and thinning.  Follow-up x-rays were recommended.  AR 328.

On January 28, 2007, Dr. Abbas Mehdi, M.D., a neurologist examined Plaintiff with regard to his arthritic complaints.  AR 324-327. Dr. Mendi found Plaintiff had normal range of motion in his lumbar spine, and no evidence of joint swelling.  AR 325-326.  Dr. Mehdi found that Plaintiff's joints did not show any signs of rheumatoid arthritis or arthritis.  AR 327.  Dr. Mehdi noted that it may be possible that Plaintiff suffered from rheumatoid arthritis, but that the

condition was very minimal to mild without obvious clinical features. AR 327. Dr. Mehdi opined that Plaintiff could lift and carry one hundred pounds occasionally and fifty pounds frequently, could stand and walk six hours out of an eight hour day, and could sit without restriction. AR 327.

**ALJ's Findings**

The ALJ determined that Plaintiff suffers from bilateral shoulder pain, left hand pain, left leg pain, abdominal pain, gastritis, gastroesophageal reflux disease, and fibromyalgia which are all severe impairments. AR 23. Nonetheless, the ALJ determined the severe impairments did not meet or equal any listing impairment that would result in a disability finding. AR 24-25.

Based on his review of the medical evidence, the ALJ found that Plaintiff had the RFC that precluded lifting and carrying more than twenty pounds occasionally and ten pounds frequently, precluded using the upper extremities for pushing and pulling activities for more than fifty percent of an eight hour workday, and precluded all reaching above the shoulder. AR 25. The ALJ found that Plaintiff had no limitations on his ability to stand, walk, or sit. AR 25. Accordingly, the ALJ determined that Plaintiff retained the RFC to perform a wide range of light work. AR 25.

Given this RFC, the ALJ found that Plaintiff could not return to his past work as a tractor driver or a general construction laborer. AR 28. However, the ALJ found that Plaintiff could perform jobs that exist in significant numbers in the national economy including a hand packager, retail sales representative, and usher. AR 29. Accordingly, the ALJ found that Plaintiff was not disabled as defined by the Social Security Act. AR 30.

**SCOPE OF REVIEW**

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. In reviewing findings of fact with respect to such determinations, the Court must determine whether the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. § 405 (g). Substantial evidence means "more than a mere scintilla,"

*Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Jones v. Heckler,* 760 F.2d 993, 995 (9th Cir. 1985). In weighing the evidence and making findings, the Commissioner must apply the proper legal standards. *E.g.*, *Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must uphold the Commissioner's determination that the claimant is not disabled if the Secretary applied the proper legal standards, and if the Commissioner's findings are supported by substantial evidence. *See Sanchez v. Sec'y of Health and Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

## REVIEW

In order to qualify for benefits, a claimant must establish that he is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c (a)(3)(A). A claimant must show that he has a physical or mental impairment of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989). The burden is on the claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

In an effort to achieve uniformity of decisions, the Commissioner has promulgated regulations which contain, inter alia, a five-step sequential disability evaluation process. 20 C.F.R. §§ 404.1520 (a)-(f), 416.920 (a)-(f) (1994). This five-step analysis can be summarized as follows: (1) determination of whether the claimant is engaged in substantial gainful activity; if so engaged, the claimant is not presumed disabled and the analysis ends; (2) if not engaged in

substantial gainful activity, determination of whether the claimant has a severe impairment; if not, the claimant is not presumed disabled and the analysis ends; (3) if the claimant has a severe impairment, determination of whether any such severe impairment meets any of the impairments listed in the regulations; if so, the claimant is disabled and the analysis ends; (4) if the claimant's impairment is not listed, determination of whether the impairment prevents the claimant from performing his or her past work; if not, the claimant is not presumed disabled and the analysis ends; and (5) if the impairment prevents the claimant from performing his or her past work, determination of whether the claimant can engage in other types of substantial gainful work that exist in the national economy; if so, the claimant is not disabled and the analysis ends.

## DISCUSSION

Plaintiff asserts the following arguments: 1) the ALJ failed to comply with the Appeals Council remand order; 2) ALJ Hoffman improperly rejected the opinion of the treating doctor; 3) the ALJ erred by failing to recontact Plaintiff's treating physician and the consultive examiner; 4) the ALJ failed to properly evaluate Plaintiff's testimony; 5) the ALJ failed to consider the side effects of Plaintiff's medications; 6) the severe impairments found by the ALJ are not included in the ALJ's RFC finding; 7) the ALJ erred by failing to perform a function-by-function RFC assessment; and 8) the ALJ improperly rejected the lay witness testimony. The Court addresses each of these arguments below.

### A.    Compliance with Appeals Council's Remand Order

Plaintiff first asserts that the ALJ did not "properly" comply with the directives of the Appeals' Council's remand order. Plaintiff's argument is misdirected. After the Appeals Council vacated the ALJ's initial hearing decision and remanded the matter, the ALJ issued a new hearing decision in August 2006. AR 68-69. The Appeals Council denied Plaintiff's request for review of the decision in November 2007. AR 7-9. Where, as here, the Appeals Council denies review, the ALJ's decision stands as the final decision of the Commissioner, and that decision is subject to judicial review. See 20 C.F.R. §§ 404.967, 404.970, 404.979; see also

1    42 U.S.C. § 405(g).  Accordingly, the Court must determine whether the ALJ's final decision is

2    supported by substantial evidence and is free of legal error and not whether the ALJ complied

3    with the Appeals Council's remand order. *See***, *Stoddard v. Astrue*, 2009 WL 2030349, *6

4    (C.D.Cal July 8, 2009)* (finding no merit to claimant's argument that the ALJ erred in failing to

5    comply with Appeals Council's remand order).

6                              **B**.    ***Rejection of Treating Physician Dr. Dickey's Opinions***

7              Plaintiff argues that the ALJ improperly rejected Dr. Dickey's assessments because the

8    ALJ failed to provide clear and convincing reasons for doing so.  Specifically, Plaintiff argues

9    that the objective evidence in the records supports Dr. Dickey's assessment that Plaintiff was

10   unable to sustain full-time work.  In the alternative, the ALJ should have contacted both Dr.

11   Dickey and Dr. Stoltz, the physicians who submitted reports in this case, in order to resolve any

12   ambiguities in the record.  Defendant argues that the ALJ properly considered the medical

13   evidence.

14             Dr. Dickey provided three reports related to Plaintiff's ability to work.  On the first form

15   received by the Social Security Administration on June 28, 2004, Dr. Dickey indicated that

16   Plaintif could do sedentary work.[3]  AR 140-141.  He also indicated that his primary diagnosis

17   was arthritis and shoulder pain.  AR 140.  Dr. Dickey indicated that Plaintiff could sit six to eight

18   hours in a day.  Dr. Dickey also assessed Plaintiff's upper extremities and indicated that Plaintiff

19   was limited in his overhead activities.  AR 140.  He concluded that over an eight hour period,

20   there could be handling four to five hours, feeling six to eight hours, pushing and pulling two to

21   three hours, and grasping six to eight hours.  AR 141.  Additionally, there could be no reaching.

22   AR 141.  Dr. Dickey did not identify any limitations due to hand impairments.  AR 141.

23             With regard to this report, the ALJ noted that Dr. Dickey indicated that the "claimant

24   could perform sedentary work activity, but provided specific information about the claimant's

25   limitations that indicates that the claimant actually remained capable of performing light work

26

27                 [3] This form is not dated.

28

                                                   13

activity." AR 27. The ALJ found this report was most consistent with the record as a whole and relied on this as a basis for assessing the Plaintiff's residual functional capacity. AR 27.

On March 6, 2006, Dr. Dickey completed a second form. The ALJ noted that this form indicated that Plaintiff is unable to perform sedentary work.[4] The ALJ gave this form little evidentiary weight because the report indicates that the claimant is unable to sit for more than three to four hours at a time without a rest period, but then states that the claimant is unable to sit for more than a total of two to three hours over an eight-hour workday. AR 27. The ALJ discounted this report because the careless error in filing out the form cast doubt on the accuracy of the other information contained on the form. AR 27.

On March 13, 2007, Dr. Dickey completed another form reporting that Plaintiff was not capable of performing sedentary work. AR 341. He also indicated that Plaintiff was unable to sit, stand, or walk more than twenty minutes at one time over an eight hour day. The ALJ rejected this report because the information on the form was inconsistent with Plaintiff's admitted activities of traveling back and forth by train between Fresno and the San Francisco Bay Area, as well as by Plaintiff's testimony that he could sit for seven hours out of an eight hour workday. AR 27; 384-385; 438-439. Accordingly, the ALJ gave this opinion little weight. AR 27.

The ALJ gave more weight to the examination completed on March 13, 2004, by Dr. Stotlz, an internal consultative examiner who opined that Plaintiff was able to perform a full range of light work activity with the exception of being precluded from reaching above shoulder level. AR 229-234. In doing so, the ALJ noted that Dr. Stoltz's assessment was consistent with Dr. Dickey's report received June 28, 2004. AR 27. The ALJ relied on both of these assessments in his formulation of the RFC. AR 27.

The ALJ rejected portions of a non-examining state agency medical assessment

---

[4] Although the ALJ states that the form indicates that Plaintiff is unable to perform sedentary work, the form, although ambiguous, indicates that Plaintiff is not precluded from performing sedentary work. AR 27, 329.

completed by Dr. Lopez in 2004, to the extent that it was inconsistent with Dr. Stoltz and Dr. Dickey's report.  The ALJ also gave little weight to the opinion of Dr. Abbas Mehdi, M.D., the state agency consultant's opinion who examined Plaintiff on January 28, 2007.  AR 324-327. The ALJ discounted Dr. Mehdi's opinion because the examiner found that Plaintiff was capable of carrying one hundred pounds and could perform a full range of heavy work.  AR 28.  The ALJ opined that this opinion was inconsistent with the other opinions in the record and gave it little weight.

*The Law*

The opinions of treating doctors should be given more weight than the opinions of doctors who do not treat the claimant.  *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir.1998); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir.1995).  Where the treating doctor's opinion is not contradicted by another doctor, it may be rejected only for "clear and convincing" reasons supported by substantial evidence in the record.  *Lester*, 81 F.3d at 830.  Even if the treating doctor's opinion is contradicted by another doctor, the ALJ may not reject this opinion without providing "specific and legitimate reasons" supported by substantial evidence in the record.  *Id.* (quoting *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir.1983)).  This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings.  *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir.1989).  The ALJ must do more than offer his conclusions.  He must set forth his own interpretations and explain why they, rather than the doctors', are correct.  *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir.1988).  Therefore, a treating physician's opinion must be given controlling weight if it is well-supported and not inconsistent with the other substantial evidence in the record.  *Lingenfelter v. Astrue*, 504 F.3d 1028 (9th Cir. 2007).

In *Orn v. Astrue*, 495 F.3d 625 (9th Cir. 2007), the Ninth Circuit reiterated and expounded upon its position regarding the ALJ's acceptance of the opinion an examining physician over that of a treating physician.  "When an examining physician relies on the same

clinical findings as a treating physician, but differs only in his or her conclusions, the conclusions of the examining physician are not "'substantial evidence.'" *Orn,* 495 F.3d at 632; *Murray,* 722 F.2d at 501-502. "By contrast, when an examining physician provides 'independent clinical findings that differ from the findings of the treating physician' such findings are 'substantial evidence.'" *Orn,* 496 F.3d at 632; *Miller v. Heckler,* 770 F.2d 845, 849 (9th Cir.1985). Independent clinical findings can be either (1) diagnoses that differ from those offered by another physician and that are supported by substantial evidence, *see Allen v. Heckler,* 749 F.2d 577, 579 (9th Cir.1985), or (2) findings based on objective medical tests that the treating physician has not herself considered, *see Andrews,* 53 F.3d at 1041.

If a treating physician's opinion is not giving controlling weight because it is not well supported or because it is inconsistent with other substantial evidence in the record, the ALJ is instructed by Section 404.1527(d)(2) to consider the factors listed in Section 404.1527(d)(2)-(6) in determining what weight to accord the opinion of the treating physician. Those factors include the "[l]ength of the treatment relationship and the frequency of examination" by the treating physician; and the "nature and extent of the treatment relationship" between the patient and the treating physician. 20 C.F.R. 404.1527(d)(2)(i)-(ii). Other factors include the supportablility of the opinion, consistency with the record as a whole, the specialization of the physician, and the extent to which the physician is familiar with disability programs and evidentiary requirements. 20 C.F.R. § 404.1527(d)(3)-(6).

As a preliminary matter, the Court is not persuaded by the government's argument that Dr. Dickey was not Plaintiff's treating physician. The record is clear that Dr. Dickey treated Plaintiff for his conditions over several years. AR 157; 159-160; 279-290; 294-315; 319-320; 341. Accordingly, the Court considers Dr. Dickey to be one of Plaintiff's treating physicians.

In this case, the ALJ did not entirely reject Dr. Dickey's opinion since he relied on Dr. Dickey's June 2004 report. However, the ALJ also relied on Dr. Stoltz's 2004 report in formulating the RFC. Because Dr. Stotlz's is an examining physician, the ALJ must provide

specific and legitimate reasons supported by substantial evidence for discounting portions of Dr. Dickey's opinion.

Here, the ALJ failed to do so. For example, the ALJ discounted Dr. Dickey's 2006 report because the doctor gave inconsistent answers regarding the time Plaintiff could sit. AR 27. This is not a specific and legitimate reason to reject the entire report since the ALJ could have contacted Dr. Dickey for clarification. While it could be argued that ambiguities were resolved when Dr. Dickey filled out the 2007 questionnaire, the ALJ also rejected this report on the basis that the information on the form was inconsistent with Plaintiff's testimony. Specifically, Dr. Dickey reported that Plaintiff was only able to sit, stand, or walk for no more than twenty minutes at one time over an eight hour day. AR 27; 341. The ALJ found that Plaintiff's activities of daily living of traveling back and forth to Fresno by train, and Plaintiff's own testimony revealed that he could sit for seven or eight hours at a time. AR 27. However, a review of Plaintiff's testimony reveals it does not conflict with the information in Dr. Dickey's report. Plaintiff testified that he sometimes takes the train to visit family. AR 384-385. However, he also had made the drive from Fresno to Fremont since becoming sick and it would take five hours. AR 385. He used to be able to make the drive in three hours, but he had to stop too many times. AR 385. If he takes the train, he can get up and move around. AR 385. Furthermore, although Plaintiff stated that he could sit for seven or eight hours, he also clearly testified that he needed to get up every ten to twenty minutes when sitting. AR 438-439. Here, Plaintiff's testimony was not inconsistent with Dr. Dickey's report and the reasoning articulated by the ALJ does not constitute specific and legitimate reasons to dismiss the opinion.

Additionally, the Court notes that there was also information contained in Dr. Dickey's 2004 report that the ALJ did not properly address. For example, Dr. Dickey indicated that Plaintiff had no hand impairments. AR 141. However, Dr. Dickey also indicated that Plaintiff had restrictions in reaching, handling, feeling, and grasping. AR 141. While the ALJ included the reaching restriction in his assessment, he did not incorporate Dr. Dickey's limitation with

regard to handling, feeling, and grasping in the RFC.  Furthermore, although Dr. Dickey imposed a pushing and pulling limitation of two to three hours, the ALJ's RFC imposed a pushing and pulling limitation of fifty percent which is not consistent with Dr. Dickey's assessment.

Finally, although Plaintiff complained of hand pain when he was evaluated by Dr. Stotlz in 2004, no assessment regarding his hands was performed.  AR 229, 234. This is important because of the ambiguity in Dr. Dickey's report with regard to Plaintiff's hands.  The Court is not persuaded by the government's argument that Plaintiff's restrictions regarding his hands are irrelevant because light jobs "generally do no require fine finger activities."  See, SSR 83-10.  To the contrary, light work jobs do "require the use of arms and hands to grasp and to hold and turn objects."  SSR 83-10.  Here, the ALJ did not include all of the information in Dr. Dickey's  2004 report in his RFC, nor did he attempt to contact the evaluators to clarify the ambiguities in the record. Although Plaintiff argues that the Court should grant benefits based on Dr. Dickey's assessment, the Court finds that the record is too ambiguous to do so.

*Duty to Contact Dr. Dickey and Dr. Stoltz*

The court recognizes that it is the duty of the claimant to prove to the ALJ that he is disabled.  20 C.F.R. § 404.1512(a).  To this end, he must bring to the ALJ's attention everything that supports a disability determination, including medical or other evidence relating to the alleged impairment and its effect on her ability to work.  *Id.*  For his part, the ALJ has the responsibility to develop "a complete medical history" and to "make every reasonable effort to help [the plaintiff] get medical reports."  20 C.F.R. § 404.1512(d).   If this information fails to provide a sufficient basis for making a disability determination, or the evidence conflicts to the extent that the ALJ cannot reach a conclusion, he may seek additional evidence from other sources. 20 C.F.R. §§ 404.1512(e);  404.1527(c)(3), *see also Mayes v. Massanari*, 262 F.3d 963, 968 (9th Cir.2001).  However, the ALJ's obligation to obtain additional evidence is triggered only "when the evidence from the treating medical source is inadequate to make a determination as to the claimant's disability."  *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002);

*Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir.2001) (holding that ALJs have a duty fully and fairly to develop the record when the evidence is ambiguous or "the record is inadequate" to allow for proper evaluation of the evidence). When the ALJ finds support in the record adequate to make a determination regarding the claimant's disability, he does not have a duty to contact the doctors." *Bayliss, v. Barnhart*, 427 F. 3d 1211, 1217 (9th Cir. 2005).

Here, the information was inadequate to adequately assess Plaintiff's disability as there are conflicting reports and no information related Plaintiff's hand impairments.   Moreover, the ALJ did not give specific and legitimate reasons supported by substantial evidence for rejecting the 2006 and 2007 opinions of Dr. Dickey.   Therefore, the Court will remand the case so that the ALJ can properly evaluate the medical evidence and order additional testimony or evaluations as needed.

The Social Security Administration urges this Court to consider the fact that Dr. Dickey does not appear to be qualified to treat the Plaintiff, that she did not spend much time with the Plaintiff, and that Dr. Dickey performed little clinical tests.   The Social Security Administration also notes that Plaintiff was never actually tested for fibromyalgia but was treated by Dr. Dickey based on Plaintiff's misrepresentation that he had previously been diagnosed with fibromyalgia. AR 159; 321-323; 427.   However, the ALJ did not rely on these factors as part of his analysis and the Court is not permitted to make ad hoc rationalizations for the ALJ. *Barbato v. Commissioner of Social Sec. Admin.*, 923 F.Supp. 1273, 1276, n. 2 (C.D.Cal. 1996).   Further, the Court may not speculate as to the ALJ's findings or the basis of the ALJ's unexplained conclusions, *Lewin v. Schweiker*, 654 F.2d 631, 634-35 (9th Cir. 1981). The ALJ may consider these factors on remand if he deems it appropriate to do so.

Finally, as noted by both parties, Plaintiff has been diagnosed with alcoholism.   AR 154;183; 209-210; 430-431; 445-446.   However, the ALJ's decision only makes a passing reference to how this factor impacts Plaintiff's disability or his eligibility for benefits.   On remand, the ALJ should also address this factor if needed once the additional medical

information is obtained.

**C.** *Evaluation of Plaintiff's Testimony*

Plaintiff argues the ALJ's did not provide clear and convincing reasons for rejecting Plaintiff's pain testimony. The Commissioner responds that the ALJ properly considered Plaintiff's subjective complaints and thus no error occurred.

The ALJ is required to make specific findings assessing the credibility of plaintiff's subjective complaints. *Ceguerra v. Secretary of Health & Human Services,* 933 F.2d 735, 738 (9th Cir. 1991). "An ALJ is not 'required to believe every allegation of disabling pain' or other non-exertional impairment," *Orn v. Astrue,* 495 F.3d at 635 (citation omitted). In rejecting the complainant's testimony, "the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester v. Chater,* 81 F.3d at 834 (quoting *Varney v. Secretary of Health and Human Services,* 846 F.2d 581, 584 (9th Cir. 1988)). Pursuant to Ninth Circuit law, if the ALJ finds that the claimant's testimony as to the severity of her pain and impairments is unreliable, the ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony. *Thomas v. Barnhart,* 278 F.3d at 958. "The ALJ may consider at least the following factors when weighing the claimant's credibility: '[claimant's] reputation for truthfulness, inconsistencies either in [claimant's] testimony or between [her] testimony and [her] conduct, [claimant's] daily activities, [her] work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which [claimant] complains." *Id.* (citing *Light v. Soc. Sec. Admin.,* 119 F.3d 789, 792 (9th Cir. 1997)). "If the ALJ's credibility finding is supported by substantial evidence in the record, we may not engage in second-guessing." *Id.*

Here, the ALJ relied on three factors finding the Plaintiff not credible :1) that Plaintiff reportedly took the train frequently between Fresno and the San Francisco Bay Area (AR 384-385, 426) and that he walks from a friend's house to a nearby store to do shopping (AR 442-

443); that Plaintiff admitted to being drunk with friends at a wedding and fell while dancing (AR 442, 434-436); and 3) that Plaintiff made statements to his doctors that he wanted to get disability suggesting that Plaintiff had a secondary motive for seeking medical treatment. AR 26.

Evidence of a claimant's daily activities may be relevant to evaluating the credibility of a claimant's pain testimony. See SSR 96-7p; *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir.1989). In order to be sufficiently specific, clear and convincing to meet the standard for disregarding pain testimony, however, such evidence must show that "a claimant is able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting." *Fair v. Bowen*, 885 F.2d at 603. Here, the ALJ failed to explain how the skills listed above were transferable to the work place.

For example, the ALJ relied on the fact that Plaintiff takes the train frequently and that he could walk to the store. However, as Plaintiff argues, the ALJ never asked questions related to these activities to assess how they impact on his ability to work. Plaintiff testified that he took the train to visit family and friends so that he was able to get up and move around. AR 384-385. Moreover, when he drove, the trip would take five hours because he had to stop frequently. AR 384-385. This testimony indicates that Plaintiff was taking the train as an alternate method of transportation to accommodate his need to move around. Additionally, little information is known regarding Plaintiff's walks to the store. Accordingly, this fact gives little information regarding Plaintiff's ability to work.

Similarly, although the ALJ indicated that Plaintif's activities of socializing at bars and dancing are inconsistent with his alleged limitations, the fact that Plaintiff goes out drinking with friends does not by itself establish that Plaintiff can work. Although Plaintiff was drunk when he fell at a wedding, he also stated that had fallen because of his fibromyalgia. AR 436. "The Social Security Act does not require that claimants be utterly incapacitated to be eligible for benefits, and many home activities are not easily transferable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest or take

medication." *Fair v. Bowen*, 885 F. 2d at 603.

Finally, the fact that Plaintiff asked his doctors about disability does not establish a clear and convincing reason to find him not credible. Here, the record shows that the Plaintiff made statements to doctors about his intention to seek disability. AR 157; 171; 263; 300; 308. This fact alone, without more, does not establish a secondary motive for financial gain as alleged by the ALJ. As such, the Court finds that the ALJ's credibility assessment is not supported by clear and convincing reasons in the record. On remand, the ALJ can take additional testimony to adequately address these areas.

### D.    *Medication Side Effects*

Plaintiff argues that he suffers from dizziness, light-headedness, , sleepiness, blurred vision, and sluggishness as a result of taking his medications and that the ALJ failed to consider these medication side effects in his decision. Defendant argues that the regulations do not require that the ALJ explicitly discuss the side effects of medication, only that the ALJ consider them. Defendant contends that the ALJ's questioning of the Plaintiff's medications clearly indicates that the side effects of the medication were considered.

There are two different approaches in the Ninth Circuit regarding an ALJ's duty to consider medication side effects. The first approach requires that an ALJ consider all factors that might have a significant impact on an individual's ability to work, including the side effects of medications. *Erickson v. Shalala*, 9 F.3d 813, 817-18 (9th Cir.1993) (citing *Varney v. Secretary of HHS*, 846 F.2d 581, 585 (9th Cir.1987) (superseded by statute on other grounds). Under Varney, an ALJ may not reject a claimant's testimony as to subjective limitations of side effects without making specific findings similar to those required for excess pain testimony. *Varney*, 846 F.2d at 585.

The second line of cases has distinguished *Varney* and has held that in order for an ALJ's failure to discuss medication side effects to be in error, the side effects must be a contributing factor in a claimant's inability to work. *See*, *Osenbrock v. Apfel*, 240 F.3d 1157, 1164 (9th

Cir.2001), (no error in a question to a vocational expert that did not include information about side effects because "[t]here were passing mentions of the side effects of Mr. Osenbrock's medication in some of the medical records, but there was no evidence of side effects severe enough to interfere with Osenbrock's ability to work."); *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005), (failure to expressly address medication side effects is not error where there was no record support for side effects); *Miller v. Heckler*, 770 F.2d 845, 849 (9th Cir.1985) (claimant had the burden of producing evidence that his use of prescription narcotics impaired his ability to work).

Here, Plaintiff testified that he suffered from medication side effects at both of his hearings. AR 363; 366; 430; 451. However, this remark was made in passing and there was no mention that these medications limited Plaintiff's ability to work. Moreover, in the past, Plaintiff indicated that he did not experience medication side effects. AR 145. Given the record, the ALJ did not err in failing to specifically address the medication side effects in his decision. However, on remand, Plaintiff may present evidence related to the side effects of his medication if this impedes his ability to work and the ALJ shall consider the evidence accordingly.

### E. *The ALJ's RFC finding*

Plaintiff contends the severe impairments found by the ALJ are not included in the ALJ's RFC finding. Moreover, Plaintiff contends that the ALJ erred by failing to perform a function-by-function analysis as required by Social Security Ruling 96-8p. In reply, the Commissioner argues that the ALJ's findings were proper because the RFC properly accounted for Plaintiff's limitations. Additionally, the ALJ found Plaintiff was not credible so a function-by-function analysis was not necessary. The RFC assessment describes an adjudicator's finding about the ability of a claimant to perform work-related activities. SSR 96-5p. The ALJ has the responsibility to make findings of fact concerning a claimant's RFC based on an assessment primarily made by a medical source. 20 C.F.R. §§ 404.1526, 416.946. In addition, the ALJ must consider all of the relevant evidence, including medical records, lay evidence, and "'the effects of

symptoms, including pain, that are reasonably attributed to a medically determinable impairment.'" *Robbins v. Social Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006) (quoting SSR 96-8p).

The RFC requires the ALJ to consider a claimant's ability to meet certain job demands, such as physical demands, mental demands, sensory requirements, and other functions. 20 C.F.R. §§ 404.1545(a), 416.945(a). As such, an assessment of the claimant's exertional limitations (sitting, standing, walking, lifting and carrying abilities) and non-exertional limitations (postural and manipulative abilities and mental capacity) is required. SSR 96-8p. Social Security Ruling 96-8p requires the RFC to identify a claimant's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis. This includes the functions related to the claimant's physical abilities, mental abilities, and any other abilities affected by the claimant's impairment or impairments. 20 C.F.R. §§ 404.1545(b)-(d); 416.945(b)-(d). Pursuant to the narrative discussion requirement provided in SSR 96-8, the RFC assessment must contain a "thorough discussion and analysis" of the objective medical and other evidence, including pain, and a "logical explanation of the effects of these symptoms on the individual's ability to work." SSR 96-8.

Here, the ALJ found that Plaintiff had the RFC to perform a wide range of light work. AR 25. The Court finds that the ALJ's reasoning in formulating the RFC was not proper given the ambiguities of the medical record, as well as the credibility assessment of the Plaintiff. On remand, the ALJ shall assess the RFC based on the new information presented.

### F.     Lay Opinion Testimony

Plaintiff argues that the ALJ erred in failing to consider a statement made by Plaintiff's mother regarding his ability to work. Judges may, "in addition to evidence from the acceptable medical sources ..., also use evidence from other sources to show the severity of [plaintiff's] impairment(s) and how it affects [his] ability to work." 20 C.F.R. §§ 404.1513(d), 416.913(d). Such other sources include spouses, parents and other caregivers, siblings, other relatives,

friends, neighbors, and clergy. See 20 C.F.R. §§ 404.1513(d)(4), 416.913(d)(4). Lay witness testimony by family members and friends who have the opportunity to observe plaintiff on a daily basis "constitutes qualified evidence" that the ALJ must consider. *Spraaue v. Bowen*, 812 F.2d 1226, 1231-32 (9th Cir.1987); see *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir.1993) ( "An eyewitness can often tell whether someone is suffering or merely malingering. While this is particularly true of witnesses who view the claimant on a daily basis, the testimony of those who see the claimant less often still carries some weight."). To reject lay testimony, an ALJ must give reasons "germane to each witness" for doing so. *Dodrill v. Shalala*, 12 F.3d at 919. An ALJ may not "discredit [ ] lay testimony" concerning a plaintiffs limitations just because he finds that it is "not supported by medical evidence in the record." *Bruce v. Astrue*, 557 F.3d 1113, 1116 (9th Cir. 2009) (quoting Smolen, 80 F.3d at 1289).

Here, Plaintiff's mother submitted a letter in which she stated that Plaintiff was not able to work for the prior three years, that he had to give up his apartment, and that he had no money to live on. AR 150. Plaintiff's mother also reported that Plaintiff was in constant pain, that he had to take pain pills, and that if his application for disability were turned down, Plaintiff would have "no place to go and no money to live on." AR 150.

Plaintiff argues that this statement establishes that during the relevant times, Plaintiff did not have the ability to perform regular, full time light work on a continuing basis. However, Plaintiff offers no support for this assertion. The ALJ rejected this testimony on the basis that *inter alia*, the statements did not provide details about any specific functional limitations but merely makes conclusory statements that Plaintiff is unable to work. AR 26. The Court finds that this is a germane reason and the ALJ did not commit error in rejecting the testimony.

## REMAND

Section 405(g) of Title 42 of the United States Code provides: "the court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Secretary, with or without remanding the cause for a rehearing."

In social security cases, the decision to remand to the Commissioner for further proceedings or simply to award benefits is within the discretion of the court. *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989). "If additional proceedings can remedy defects in the original administrative proceedings, a social security case should be remanded. Where, however, a rehearing would simply delay receipt of benefits, reversal and an award of benefits is appropriate." *Id.* (citation omitted); *see also Varney v. Secretary of Health & Human Serv.*, 859 F. 2d at 1399. ("Generally, we direct the award of benefits in cases where no useful purpose would be served by further administrative proceedings, or where the record has been thoroughly developed."). In this case, the Court finds that remand is appropriate.

## CONCLUSION

Based on the foregoing, the Court finds that the ALJ's decision is not supported by substantial evidence and is therefore REVERSED and the case is REMANDED to the ALJ for conduct further proceedings consistent with this opinion. The Clerk of this Court is DIRECTED to enter judgment in favor of Plaintiff Bruce Maddon and against Defendant Michael J. Astrue, Commissioner of Social Security.

IT IS SO ORDERED.

**Dated:   February 1, 2010          /s/ Gary S. Austin          **
UNITED STATES MAGISTRATE JUDGE